## UNITED STATES ex rel. ALTIERI v. FLINT, Commanding Officer.
### No. 1040.

District Court, D. Connecticut.
Sept. 16, 1943.

On the Merits Sept. 17, 1943.

Trotta, Fasano & Trotta, of New Haven, Conn., for relator.

Thomas J. Dodd, Jr., Sp. Asst. to the Atty. Gen., of Hartford, Conn., for respondent.

HINCKS, District Judge.

This matter is before the court upon the respondent's oral motion to dismiss the elator's petition and the writ of habeas corpus which under the direction of the court had issued pursuant thereto.

The petition alleges in substance that the relator had been erroneously classified

by a Local Board as 1–A under the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., and that consequent upon his induction he "was placed under the authority of the Commanding Officer at the Induction Center for the United States Army at New Haven, Conn., and is now subject to his orders and is by him unlawfully and illegally detained and restrained of his liberty."

The respondent's motion to dismiss is predicated upon the contention that the writ will not lie because the relator is not actually confined and restrained of his liberty and that the respondent is without custody and without power to produce the body in court. Indeed, the respondent in his return recites a lack of power to comply but states that "obedient, however, to the mandate of the writ of Habeas Corpus, the respondent herewith has requested said Altieri to appear before this court".

■■■ The motion, of course, will be deemed to admit only allegations of fact. And the allegation that the relator is subject to the respondent's orders and is by him illegally detained and restrained of his liberty is not an allegation of fact; it is a conclusion of law. However, for present purposes the court is not restricted to the bare allegations of fact as contained in the petition; it may also take into account such facts as are within the reach of judicial notice. Accordingly for present purposes I take into account Army Regulations No. 615–500 issued by the War Department September 1, 1942.

These regulations provide (Sec. 13(e) (4) that upon induction the inductees "will then be informed that they are now members of the army of the United States and given an explanation of their obligation and privileges", and that (Sec. 16) those "who so desire will be given the opportunity, immediately after induction, to return to their residence to arrange personal, financial, and business affairs. This will be accomplished by release from active service, transfer to the Enlisted Reserve Corps and subsequent call to active service." And the same section provides that an order should be prepared, transferring such inductees to the Enlisted Reserve Corps, ordering them to proceed to the situs of their respective Local Boards, and calling them to active service on a certain date a fortnight later (with a two-day leeway to obviate Sunday travel). The regulations further disclose that the resulting travel shall be at public expense and that the order just referred to shall be explained to the inductees by "the Commanding Officer of a recruiting and induction station or other officer appointed by him", who is also directed to "appoint one member of the group an acting corporal to be in charge of the group" while en route.

At least for purposes of the pending motion I may assume that the procedure prescribed above has been followed and that accordingly the relator has been transferred to the Enlisted Reserve and is subject to an order issued by the respondent herein to report at a reception center for active duty at a time certain after travel "in charge of an acting corporal" appointed by the respondent, and that subject to the foregoing the relator is completely at liberty.

■■ Under the law as laid down in this Circuit, the court may not consider the validity of a classification made by a Local Board before the "final acceptance" of the registrant by the army. United States v. Kauten, 2 Cir., 133 F.2d 703, 706. This holding is based upon the view that an earlier interposition of the court would disturb the orderly conduct of business confided to the Local Board as an administrative agency. But the opinion in this case goes on to say:

"Under this rule there would seem to have been no good reason for interrupting proceedings leading to induction until some substantial physical restraint occurred. Then the writ of habeas corpus is sufficient to remedy any irregularities of Draft Boards and to satisfy all reasonable scruples on the part of inductees. Moreover, it is the practice of the Army to grant a furlough of seven days after a registrant is formally inducted before he is subjected to military training. This gives him time to apply for a writ of habeas corpus without disturbing the selective service machinery, if he thinks that his rights as a conscientious objector have been infringed."

Doubtless the court in its reference to the seven days' furlough had in mind the regulation specified above whereby the inductee is released to the Enlisted Reserve for a period now extended to fourteen days.

■■ I can only construe the passage quoted as indicating an appellate view, though to be sure a dictum for purposes of the precise case then before the court,

that the inductee even while released to the Reserve is subject to sufficient restraint to support the issue of a writ of habeas corpus. For throughout his "furlough" the inductee is subject to the Articles of War and Army orders. 50 U.S.C.A.Appendix, § 311. Cf. United States v. Bowles, 3 Cir., 131 F.2d 818. Though for the time being he is physically at large, he is subject to military call and hence subject to a restraint upon the otherwise unrestricted course of conduct open to him. Obviously, such liberty as he enjoys by the grace of military authorities is of substantially narrower dimensions than the liberty to which he is entitled as of right under the civil law. And so I hold that his petition is not defective in that it fails to show a restraint of liberty sufficient to support the writ.

I likewise hold that the Commanding Officer of the Induction Center, who is physically within the jurisdiction of this court, is a proper respondent to the writ. For he it is who accomplished the relator's induction with its consequent curtailment of his liberty and who, pursuant to the regulations of the military establishment, has ordered him to active duty and travel under military supervision at a specified future date. His order, tested by the plenitude of the underlying military authority therefor, is in effect a continuing and effective assertion of custody,—a custody loose at the moment but a custody which may at any time be made as close as the military establishment by further order or regulation shall direct.

If, as the respondent apparently under military instructions urges, I should dismiss the writ and the relator, still obedient to the obligations of citizenship, should travel as ordered to the reception center, in this case at Camp Devens in the District of Massachusetts, what would be gained? Under the doctrine of United States ex rel. Phillips v. Downer, 2 Cir., 135 F.2d 521, and United States v. Grieme, 3 Cir., 128 F.2d 811, the relator would be entitled to his writ there. The issues there would be the issues already framed here. And the only effect would be to make it necessary for the Camp Commander to produce the relator at the seat of court in Boston (which I should not suppose would be either convenient or conducive to the morale of his Camp) and for all the witnesses, including associates of the relator and the personnel of the Local Board in

New Haven, to attend court in Boston. If, as held in the Kauten case, a proper regard for the administrative exigencies of the Selective Service System precludes an issuance of the writ before induction, a similar regard for military administration as also for the convenience of parties and witnesses suggests that the writ when sought after induction but prior to active service in some distant scene should then be entertained.

Indeed, I am perplexed to know why the military authorities, unless motivated by a legalistic attitude, should take the position that the writ here is premature. On argument they asserted their position but were unable or unwilling to explain its reasonableness. Perhaps their position is attributable to the thought that once in Massachusetts the relator, at least until the Supreme Court speaks, Cf. Bowles v. United States, 319 U.S. 33, 63 S.Ct. 912, 87 L.Ed. 1194, will be beyond the reach of the liberal doctrine of the Downer and Grieme cases, and, instead, subject to the more rigorous holding of United States v. Smith, D.C., 47 F.Supp. 607. But if I am confronted with a legal stratagem growing out of this conflict of decisions, I must of course apply the law as laid down by the appellate court in this circuit.

The respondent cites Judge Smith's decision in United States ex rel. Gascone v. Cottan, in this court, handed down in January, 1943, wherein it was held, in effect, that the writ would not lie until the relator was in active military service. But since then the Kauten decision has been handed down, and for the reasons stated above I feel that the dictum of that case should now be taken to state the law of this circuit.

The respondent also relies on Wales v. Whitney, 114 U.S. 564, 5 S.Ct. 1050, 1053, 29 L.Ed. 277. But if the doctrine of that case is applicable here it would equally have required a different holding in the Downer case. Surely the mere fact that the relator in the Downer case had pursuant to order "proceeded to Camp Upton" (the reception center) which was "in charge of" the respondent, would not show any "unusual restraint upon his liberty of personal movement" which would justify a writ within the rule of the Wales case. If the rule of the Wales case is applicable, the inductee is not entitled to a writ until after induction he so flouts military authority that he lands in the guard-house and is

subsequently sentenced to imprisonment by a judgment of a court-martial. If, as held in this circuit, he may not question the validity of administrative rulings as to his status either by way of defense to a criminal action based upon his non-compliance or on compliance by seeking a writ of habeas corpus before induction, his only remaining remedy, if the doctrine of the Wales case is applicable, is indeed of scant value.

In my view the rule of the Wales case is inapplicable to the facts here involved. Dr. Wales had long been an officer of the Navy and his status as such was unquestioned. As such an officer he was, as the court observed, 114 U.S. 571, 5 S.Ct. 1053, 29 L.Ed. 277, "always more or less subject in his movements, by the very necessity of military rule and subordination, to the orders of his superior officer." And so, as to him, "some unusual restraint upon his liberty of personal movement" was necessary to justify the issue of the writ; a mere order confining him to city limits was held not to be an "unusual restraint". But the relator here, before the restraint complained of, was not at all subject in his movements to any military order. Consequently his induction which for the first time subjected him to orders of the military establishment relatively at least was a very substantial restraint,—and sufficient, as I hold, to support the writ.

The respondent's motion to dismiss should be denied and it is ordered accordingly.

### On the Merits

This matter is now before the court on a writ of habeas corpus after a hearing on the merits of issues raised by the relator's petition, the respondent's motion to dismiss having heretofore been denied.

Findings of Fact and Conclusions of Law

1. The relator herein was born on May 5, 1924, in New Haven.

2. On November 30, 1942, he subscribed his Selective Service questionnaire wherein he stated it to be his opinion that his classification should be 4–D. In this questionnaire he stated that "by reason of religious training and belief I am conscientiously opposed to war in any form" and accordingly requested special Form 47 provided by the System for conscientious objectors. On December 7, 1942, he subscribed said Form 47 stating therein that he was "conscientiously opposed by reason of my religious training and belief to participation in war in any form and to participation in any service which is under the direction of military authorities."

3. On December 17, 1942, he was notified by his Local Board that he had been classified "1–A". Thereafter on January 19, 1943, he was accorded a hearing before the Local Board, which on February 8, 1943, notified him that he had again been classified 1–A. On February 18th he seasonably entered appeal from the classification order of February 8th by endorsement on his questionnaire. On March 9th the Board of Appeal classified the registrant as 1–A. On April 12, 1943, he was notified of a hearing on April 23rd before a Hearing Officer to consider his claim for exemption by reason of alleged conscientious objection to participation in war.

4. At said hearing on April 23, 1943, the Hearing Officer inquired of the relator whether his appeal was based on a claim to be an ordained minister or upon a claim of conscientious objection to war or upon both, and the relator replied that his appeal was based "solely on my claim of being an ordained minister. I claim classification in Class 4–D under the provisions of the Selective Service Laws", and a written statement to that effect was thereupon signed by the relator.

5. On July 14, 1943, the Board of Appeal again classified the registrant as 1–A and on July 23, 1943, the registrant was advised to that effect. On August 9, 1943, he was ordered to report for induction on August 20, 1943 on which date he was inducted and released to the Enlisted Reserve Corps of the Army under orders to report for active service on September 11, 1943. Since that time there has been no change in his status.

### Discussion

 The Board of Appeal has found that the relator was not in fact an ordained minister within the meaning of the Selective Service Act and its regulations. This finding may not be disturbed by the court in the absence of a showing that it was reached arbitrarily without foundation on substantial evidence or under an erroneous conception of the law. No such showing has been made here.

The evidence shows that this young man, not yet 21, represented to the Board that at the time of his hearing he was a regular student in the third-year class of a local

High School; that after school sessions he generally gave his mother some help with the housework; and that in the afternoons and evenings he went from house to house and on Fridays stayed for an hour on street corners preaching,—a course of action maintained, he said, since he was seven years old.

His only evidence of ordination was his own vague testimony, supplemented by his written statement in his questionnaire, that he had been "formally ordained" by one N. H. Knorr in New York City, on September 20, 1942. He exhibited to the Draft Board a printed, undated, card bearing a facsimile signature of N. H. Knorr as President of the Watch Tower Bible and Tract Society purporting to certify that the person "whose signature appears below is an ordained minister of Jehovah God, etc." The card had indeed been subscribed by the relator but there was nothing to show that the Board was given any evidence as to the circumstances or conditions under which the card had been issued. It results that the card amounts at most to nothing more than a self-serving statement of the relator himself that he is in fact an ordained minister.

Altogether, taking into account the relator's youth, education, manner of living, and the confusion of thought manifested in the written statement of his beliefs which he submitted to the Board, I cannot find that the Board acted arbitrarily in reaching this finding.

Nor is there room for the contention that his claim for classification as a conscientious objector had been illegally disallowed. Indeed, there was at most only scant evidence of religious scruples against participation in war. True, he told the Board "I am interested in the bible and do not believe in fighting." But this statement was expressly made in support of his claim for classification as a minister, many of whom are without religious scruples against participation in war. Indeed, many men who do not believe in fighting nevertheless find themselves able to submit to induction under the Selective Service Act without violation of their religious scruples. Just because one of the Board members testified that he believed the relator "sincere", consistency does not require a finding that the relator's objections were attributable to religious scruples. Indeed, in the light of the relator's statements to the Board, it would have been as reasonable to attribute his objections to a state of mental confusion resulting perhaps either from the emotional intensity of his life or from inadequate sleep and nourishment.

However, it is not necessary to examine the validity of the finding on this branch of the case. For the relator is not entitled to bring into question this finding of the Board unless he availed himself of the administrative appeal which the statute provided. And, as found above, after the appeal was filed the relator expressly abandoned claim to classification as a conscientious objector. To be sure, there was testimony that the Hearing Officer to whom the statement was given had informed him that he could not appeal from the denial of his claim for classification as an ordained minister if he still claimed to be a conscientious objector; that he must choose between these two grounds of appeal. But the testimony of the Hearing Officer was directly to the contrary, and is adopted as the basis of my finding on the point above.

Counsel for the relator also contends that the induction was invalid because the Board of Appeals, as found above, acted upon the case twice. But both times the Board made a 1–A classification. It is altogether plausible to believe that after the first action of the Board in February it was noted that the relator's claim for classification as a conscientious objector had not been referred to a Hearing Officer as regulations prescribe. Regulations 627.25. Accordingly, apparently in order to give the relator every benefit to which he was entitled under the regulations, the case was then referred to the Hearing Officer with the result, as found above, that the claimed classification as conscientious objector was found to be abandoned, or had not been included, as a ground of appeal. That being so, perhaps the classification made by the Board of Appeals in February might have served as an adequate basis for induction. But the fact that the Appeal Board acted on the case again in July certainly imports no prejudice to the relator. At most it indicates that his case had more consideration than under the strict letter of the law and regulations he was entitled to.

## Conclusion

I find therefore that there is no evidence that the administrative boards acted arbi-

trarily or under an erroneous conception of the law and regulations, and it is ordered that the writ be discharged and that the petition be dismissed.