UNITED STATES of America, Appellant,

v.

Corliss LAMONT, Appellee.

UNITED STATES of America, Appellant,

v.

Abraham UNGER, Appellee.

UNITED STATES of America, Appellant,

v.

Albert SHADOWITZ, Appellee.

Nos. 301, 300, 299,
Dockets 23955, 23954, 23953.

United States Court of Appeals
Second Circuit.

Argued June 5, 1956.

Decided Aug. 14, 1956.

Robert Kirtland, Asst. U. S. Atty., S. D. N. Y., New York City (Paul W. Williams, U. S. Atty., New York City, on the brief), for appellant.

Philip Wittenberg, New York City (Irving Like, New York City, on the brief), for appellee Lamont.

David M. Freedman, New York City, for appellee Unger.

Victor Rabinowitz, New York City (Rabinowitz & Boudin and Leonard B. Boudin, New York City, on the brief), for appellee Shadowitz.

Before CLARK, Chief Judge, and HINCKS and WATERMAN, Circuit Judges.

CLARK, Chief Judge.

These are appeals from orders of Judge Weinfeld dismissing three indictments charging Corliss Lamont, Abraham Unger, and Albert Shadowitz respectively with refusal to answer questions before the Permanent Subcommittee on Investigations of the Senate Committee on Government Operations, on the ground that the indictments failed to charge violations of 2 U.S.C. § 192. Judge Weinfeld's scholarly opinion is reported at D.C.S.D.N.Y., 18 F.R.D. 27.

Lamont, Unger, and Shadowitz were called before a one-man subcommittee and asked to answer certain questions relating to their possible participation in or knowledge of subversive or leftist activities. They refused on the grounds that the subcommittee was without authority to require answers to the questions and that they were entitled under the First Amendment to remain silent. The Senate cited them for contempt; and they were indicted substantially in the statutory language of 2 U.S.C. § 192, the pertinent portion of which reads as follows: "Every person who having been summoned as a witness by the authority of * * * any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor * * *."[1]

The judge found each indictment to be fatally defective in that it failed to plead

1. The formal charges of each indictment are shown by that against defendant Unger as follows:

"Introduction

"1. On or about the 17th day of September, 1953, in the Southern District of New York, the Permanent Subcommittee on Investigations of the Committee on Government Operations was holding hearings pursuant to Public Law 601, 79th Congress, Second Session, Chapter 753 [60 Stat. 812], as amended; Senate Resolution No. 180, 81st Congress, Second Session, dated February 1, 1950; Senate Resolution 280, 82nd Congress, Second Session, dated March 3, 1952; Senate Resolution 40, 83rd Congress, First Session, dated January 30, 1953.

"2. The defendant, Abraham Unger having been summoned as a witness by the authority of the United States Senate to give testimony, appeared as a witness before the Permanent Subcommittee aforesaid at the place and on the date above stated, and was asked questions which were pertinent to the question then under inquiry. At the place and times stated, the defendant refused to answer those pertinent questions. The allegations of this introduction are adopted and incorporated into the counts of this indictment, which follow, the same as if set forth therein in extenso, each of which counts will, in addition merely describe the questions which were asked of the defendant, Abraham Unger and which he refused to answer.

"(Title 2, United States Code, Section 192.)

"Count 1. Were you active in the Professional Communist Group in New York?

"Count 2. Were you head of the Professional Group of the Communist Party in New York?

"Count 3. Are you a member of the Communist Party as of this moment?

"Count 4. Do you know whether you are a member of the Communist Party?

"(Title 2, Section 192, United States Code)."

The other indictments differed only in the counts or statements of questions asked. The indictment against Shadowitz set forth twelve counts of questions

the following elements of the offense: (1) that the committee before which the alleged refusal to answer occurred was duly empowered by either House of Congress to conduct the particular inquiry, setting forth the source of the authority; (2) that the inquiry was within the scope of the authority granted to the committee; and (3) that the witness' refusal to answer was willful or deliberate and intentional. Of these three asserted deficiencies we need here consider only the second and so much of the first as may also relate to the question whether this inquiry fell within the subcommittee's authority.[2] This question and its corollary as to the right of the defendants to raise it prior to the trial is the basic issue in the case.

On this appeal the government contends in effect that the authority of a congressional committee should be presumed for purposes of testing the indictment, or, alternatively, that the general reorganization statute and congressional resolutions referred to in the indictment constitute a sufficient pleading of the subcommittee's power. Defendants, on the other hand, argue that they should not be put to the expense and humiliation of preparing for trial and defending themselves when purely as a matter of law it is clear that the excursions of this Senate subcommittee, constituted to study the operation of government activities to determine its economy and efficiency,[3] when extended into the field of alleged subversive activi-

apparently designed to show Communist infiltration or control of his union and of the articles appearing in the union paper. The indictment against Lamont contained twenty-three counts showing inquiries as to Communist Party control over his own writings, some of them purchased by the United States Government or Army, how long a trip he made to Russia, whether he knew that certain persons, writers and professors whose works had also been used and purchased by the Government, were Communists, and whether he himself was a Communist or had engaged in Communist activities or attended party meetings.

2. The United States Court of Appeals for the District of Columbia Circuit has recently held, contrary to the decision below, that a specific allegation of willfulness is not required. United States v. Deutch, D.C.Cir., 235 F.2d 853.

3. See Pub.L. No. 601, 79th Cong., 2d Sess., c. 753, which as amended to the date of these alleged offenses provided in part:

"Sec. 102. * * * (1) The following standing committees [of the Senate] shall be appointed * * *:

"(g) (1) Committee on Government Operations, to consist of thirteen Senators, to which committee shall be referred all proposed legislation, messages, petitions, memorials, and other matters relating to the following subjects:

"(A) Budget and accounting measures, other than appropriations.

"(B) Reorganizations in the executive branch of the Government.

"(2) Such committee shall have the duty of—

"(A) receiving and examining reports of the Comptroller General of the United States and of submitting such recommendations to the Senate as it deems necessary or desirable in connection with the subject matter of such reports;

"(B) studying the operation of Government activities at all levels with a view to determining its economy and efficiency;

"(C) evaluating the effects of laws enacted to reorganize the legislative and executive branches of the Government;

"(D) studying intergovernmental relationships between the United States and the States and municipalities, and between the United States and international organizations of which the United States is a member. * * *"

Of the Senate Resolutions cited in the indictments, Sen.Res. 180, 81st Cong., 2d Sess. (1950), authorized the fixing of certain quorum requirements; and Sen.Res. 280, 82d Cong., 2d Sess. (1952), changed the name of the committee. Sen.Res. 40, 83d Cong., 1st Sess. (1953), continued the operations of the Permanent Subcommittee on Investigations of the Committee on Government Operations for a year, with authority to investigate improper influences in government. But Sen.Rep. No. 19, 83d Cong., 1st Sess. (1953), which accompanied Sen.Res. 40, explained the authority of the subcommittee in this connection as follows:

"Under this resolution, the Permanent Subcommittee on Investigations will inquire into the administration of Government agencies to see wherein certain economies may be effected. It is also intended that certain aspects of improper influence in Government shall be investi-

ties of nongovernmental persons were entirely unauthorized. The question is of substantial importance, touching one of the sensitive areas of public thought and governmental control.

■■ It is of course the function of an indictment to set forth without unnecessary embroidery the essential facts constituting the offense and thus accurately acquaint the defendant with the specific crime with which he is charged.[4] But an allegation for lack of which the prosecution must evidently and as a matter of law fail cannot be regarded as superfluous. In United States v. Kamin, D.C.Mass., 135 F.Supp. 382, Id., D.C., 136 F.Supp. 791, a closely similar prosecution for contempt committed before the same subcommittee here involved, the indictment contained no allegations showing the nature or subject of the inquiry in question or the committee's authority to conduct such an inquiry. Defendant's motion to dismiss the indictment was denied by Judge Aldrich, but he ordered a bill of particulars to be furnished in which the government set forth the subject matter of the inquiry. Defendant then renewed his motion to dismiss on the affirmative showing from the particulars furnished that the inquiry was outside the subcommittee's alleged authority. In an oral decision denying the motion the judge appears to have recognized the dilemma he had thus created for himself, but held that just as a bill of particulars cannot be used to repair a fatal defect in an indictment, so it cannot be used to create a fatal defect in an indictment held valid.

Defendant Kamin was then put to trial and subsequently acquitted upon a determination by Judge Aldrich that the alleged instances of refusal to answer questions took place during the course of an inquiry which lay outside the scope of the subcommittee's authority. United States v. Kamin, supra, D.C.Mass., 136 F.Supp. 791. Thus an unnecessary trial might have been averted had it been made clear in advance thereof that there was lacking an essential element of the crime charged, namely, that the inquiry was within the subcommittee's authority.

The deficiencies in the indictments now before us are thus quite fundamental and go far beyond the question whether defendants have been put on adequate notice. Rather the question is whether defendants are to be put to trial on an allegation which on its face charges no offense. Sec. 102 of the Legislative Reorganization Act of 1946, Pub.L. No. 601, 79th Cong., 2d Sess., c. 753, § 102 (g), setting forth the scope of the authority of the parent committee, states in pertinent part that:

"(2) Such committee shall have the duty of—

\*  \*  \*  \*  \*  \*

"(B) studying the operation of Government activities at all levels with a view to determining its economy and efficiency;"

■ There is no allegation in the indictments here linking the inquiry conducted by the subcommittee to the grant of authority dispensed to its parent committee.[5] In fact on its face and taking

---

gated, but any inquiries undertaken will in no way interfere or transgress those investigations which other Senate and House of Representatives committees may be engaged in making in comparable areas of Government operation, *such as subversive activities.*" [Emphasis added.]

4. See Cummings, The Third Great Adventure, 3 F.R.D. 283, 285; F.R.Cr.P., rule 7(c).

5. It may be noted that in recent cases involving perjury before a Congressional committee, the indictments set forth at length the nature and scope of the inquiry. See United States v. Debrow, 5 Cir., 203 F.2d 699, 702, note 1 (involving this same committee), reversed on other grounds 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92; United States v. Lattimore, 94 U.S.App.D.C. 268, 215 F.2d 847, 856, note 2. Although concededly the purpose of such allegations in perjury prosecutions is to establish the materiality of alleged false answers, like allegations are equally requisite here to establish the

judicial notice, as we must, of the pertinent legislation, the inference must be just the opposite.[6]

"* * * If the committee selected a subject which is prima facie within its jurisdiction, doubtless a court could not go behind it, since jurisdiction then affirmatively appears. But if it selected a subject that was not prima facie within its jurisdiction, but was prima facie without it, it is not entitled to a presumption that the investigation differed from what it purported to be. That would be, in effect, to operate the presumption in reverse." United States v. Kamin, supra, D.C.Mass., 136 F.Supp. 791, 804.

We have then the anomalous situation that the government is now attempting to hang onto and retain for trial indictments for offenses which it cannot support in law. For Judge Aldrich's reasoning on the merits of the Kamin case, supra, seems quite convincing. We shall not repeat his cogent statement here, but point out that the problem is particularly highlighted by some of the questions put to Lamont. How a committee to promote retrenchment and efficiency in governmental operations is going to be aided in any way by an inquiry as to the length of time spent by a private writer on a trip to Russia must remain undisclosed. The latest ruling of the Supreme Court seems clearly to forbid so extensive, if not purposeless, an invasion of the rights of the individual.[7] The leading modern authority is United States v. Rumely, 345 U.S. 41, 44, 73 S.Ct. 543, 97 L.Ed. 770. See also McGrain v. Daugherty, 273 U.S. 135, 173, 176, 47 S.Ct. 319, 71 L.Ed. 580, 50 A.L.R. 1; Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377; United States v. Orman, 3 Cir., 207 F.2d 148, 153; Bowers v. United States, 92 U.S.App.D.C. 79, 202 F.2d 447.

■■ As presented to us, the emphasis has been upon matters of criminal pleading and adequate notice; while these are involved, the issue goes beyond this to the very substance of whether or not any crime has been shown. This concentration upon procedure perhaps explains why in his generally able brief the prosecutor has failed to touch upon the crucial problem at the heart of the case. For the charges could not have survived had there been more formal and precise allegations of pertinency, since the governing legislation viewed in the light of the pertinent precedents demonstrates the lack of pertinency of the questions. It is elementary law that pleadings, both criminal and civil, must

authority of the subcommittee in the premises.

6. The result might well be different were this a case of a committee created by Congress to hold hearings for a specific purpose, with the inquiry in question apparently falling within the assigned purpose. Cf. United States v. Josephson, 2 Cir., 165 F.2d 82; certiorari denied Josephson v. United States, 333 U.S. 838, 68 S.Ct. 609, 92 L.Ed. 1122 (un-American activities); Bowers v. United States, 92 U.S.App.D.C. 79, 202 F.2d 447 (organized crime in interstate commerce); United States v. Rumely, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770 (lobbying). See also cases involving committees created to conduct a specific inquiry, e. g., Sinclair v. United States, 279 U.S. 263, 297, 299, 49 S.Ct. 268, 73 L.Ed. 692.

Here the function of the committee—to investigate governmental efficiency—has no apparent connection with the inquiry from which these convictions arise.

"It is significant, although not necessarily controlling, that in every case except those involving this committee examined by the Court, or called to the Court's attention, in which reference is made to the indictment, it unmistakably appears that the authority of the committee to conduct the investigation was either pleaded in haec verba or incorporated by reference." United States v. Lamont, D.C.S.D.N.Y., 18 F.R.D. 27, 36, n. 28.

7. Although not in the record before us, certain extracts from Senate hearings and debates suggest a purpose to trace Communist infiltration in defense plants and the Army, and to that end to find use of writings of Communist authors. Whatever bearing the beliefs of such authors beyond anything disclosed in their writings may have had on the inquiry thus set, at least no connection with governmental economy or retrenchment is indicated.

be read in the light of the facts of which the court takes judicial notice. See, among a wealth of precedents, Coppola v. United States, 9 Cir., 217 F.2d 155; Kempe v. United States, 8 Cir., 151 F.2d 680, 684; First Nat. Bank of Genoa v. American Surety Co. of New York, 239 App.Div. 282, 267 N.Y.S. 565; U. S. ex rel. Altieri v. Flint, D.C.Conn., 54 F. Supp. 889, affirmed 2 Cir., 142 F.2d 62; 42 C.J.S., Indictments and Informations, § 113; 71 C.J.S., Pleading, § 7; 20 Am. Jur., Evidence, § 25; Clark, Code Pleading 250, 251, 513 (2d Ed.1947). Here the matter is yet stronger, for in ordinary matters of judicial notice, there is, it seems, some option in the court whether to accept facts without proof or to require formal proof. See Morgan, Judicial Notice, 57 Harv.L.Rev. 269 (1944), and compare Davis, Official Notice, 62 Harv.L.Rev. 537 (1949). But it can hardly be thought that we can assume to deny knowledge of the governing legislation creating the very committee and showing its powers. 9 Wigmore on Evidence § 2572 (3d Ed.1940); McCormick on Evidence § 326 (1954); Uniform Rules of Evidence, Rules 9(1) and (2). The indictments are therefore fatally defective. Cf. 24 Geo.Wash.L.Rev. 342 (1956).

Pleading, either civil or criminal, should be a practical thing. Its purpose is to convey information succinctly and concisely. In older days the tendency was to defeat this purpose by overelaboration and formalism. Now we should avoid the opposite trend, but of like consequence, that of a formalism of generality. There seems to be some tendency to confuse general pleadings with entire absence of statement of claim or charge.[8] But this is a mistake, for general pleadings, far from omitting a claim or charge, do convey information to the intelligent and sophisticated circle for which they are designed. Thus the charge that at a certain time and place "John Doe with premeditation shot and murdered John Roe," F.R.Cr.P., Form 2, even though of comparatively few words, has made clear the offense it is bringing before the court.[9] The present indictments, however, do not show the basis upon which eventual conviction can be had; rather, read in the light of the background of facts and Congressional action, they show that conviction cannot be had.

We do not reach the other alleged insufficiencies of the indictments or the constitutional questions raised by the defendants.

Affirmed.

---

8. As in the loose descriptions of federal civil pleading as "notice pleading"—a characterization never accepted or approved by the Advisory Committee on Rules of Civil Procedure. See Report of Proposed Amendments to the Rules of Civil Procedure for the United States District Courts, October 1955, 18, 19.

9. So also the famous Form 9 of the Civil Rules, "Complaint for Negligence," shows a complete claim for damages for personal injuries.