James R. MORIN, Petitioner,

v.

Commander T. J. GRADE, Commanding Officer, Naval Reserve Surface Division 9-21 M, Madison, Wisconsin; and Lt. M. C. Schaefer, Commanding Officer, United States Naval & Marine Corps Training Center, Madison Wisconsin, Respondents.

No. 69-C-29.

United States District Court
W. D. Wisconsin.

July 8, 1969.

James L. Greenwald, Madison, Wis., for petitioner.

Edmund A. Nix, U. S. Atty., John E. Clarke, Asst. U. S. Atty., Madison, Wis., Lt. John Blasi, Great Lakes Naval Training Station, Great Lakes, Ill., for respondents.

JAMES E. DOYLE, District Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner, a naval reservist, contends that the refusal of naval authorities to discharge him from the naval reserve as a conscientious objector under applicable navy and defense department directives deprives him of rights secured to him by the Fifth Amendment to the Constitution of the United States.

The petition was filed on February 24, 1969, and respondents were ordered to show cause on February 28, 1969, why the writ should not be issued. No written response was filed, but respondents appeared on February 28, 1969. At the hearing on that date, the court received in evidence certain documents and certain oral stipulations. Both petitioner and respondents have stipulated that the petition for a writ of habeas corpus may be decided upon the basis of the present record. Petitioner and respondents have submitted memoranda in support of their respective positions. On March 1, 1969, the court in aid of its jurisdiction entered an order directing petitioner to remain in this district until further order of the court.

Department of Defense Directive No. 1300.6 (hereinafter DOD No. 1300.6) provides a procedure for permitting discharge of military personnel on the grounds of conscientious objection to participation in war. DOD 1300.6 provides in part:

"The fact of conscientious objection does not exempt men from the draft. However, the Congress * * * has deemed it more essential to respect a man's religious beliefs than to force him to serve in the Armed Forces and accordingly has provided that a person having bona fide religious objection to participation in war in any form shall not be inducted into the Armed Forces but will be required to serve his country for the same period of time in civilian work contributing to the maintenance of national health, safety, or interest under a civilian work program administered by Selective Service.

"Consistent with this national policy, bona fide conscientious objection as set forth in this Directive by persons who are members of the Armed Forces will be recognized to the extent practicable and equitable. * * *

"No vested right exists for any person to be discharged from military

service at his own request even for conscientious objection before the expiration of his term of service, whether he is serving voluntarily or involuntarily. Administrative discharge prior to the completion of an obligated term of service is discretionary with the military service concerned, based on judgment of the facts and circumstances in the case. * * *

"Since it is in the national interest to judge all claims of conscientious objection by the same standards, whether made before or after entering military service, Selective Service System standards used in determining [conscientious objector] classification of draft registrants prior to induction shall apply to servicemen who claim conscientious objection after entering military service. * * *

"Determination by the Military Department, in accordance with the facts of the case and the guidelines furnished herein, shall be final with respect to the administrative separation of its members. * * *"

DOD 1300.6 sets forth detailed guidelines and procedures for consideration of requests for discharge on the ground of conscientious objection. In accordance with DOD 1300.6 the navy has promulgated implementing regulations, Bureau of Naval Personnel Instruction 1900.5 (hereinafter BUPERSINST 1900.5). Pursuant to DOD 1300.6 and BUPERSINST 1900.5 petitioner sought a discharge from the naval reserve.

In May 1964 petitioner, then a senior in high school and 17 years of age, joined the naval reserve. On August 6, 1968, petitioner applied to respondent Grade for discharge from the naval reserve on the ground that he was a conscientious objector. At the time of his application petitioner submitted written answers (Ex. 16) to certain prescribed questions. These answers explained the nature of petitioner's religious beliefs and indicated that these beliefs had crystalized into conscientious objection to participation in war in any form during the 1967–1968 academic year when he became familiar with the writings of Meher Baba, an Indian teacher of religion. As prescribed by DOD 1300.6, petitioner was interviewed by Chaplain Jerome R. Turner, USNR–R, and respondent Grade, both of whom wrote memoranda of their interviews (Ex. 14 and Ex. 15), which memoranda were forwarded together with petitioner's application by respondent Schaefer through navy channels to the Chief of Naval Personnel, Washington, D. C. Both Chaplain Turner and respondent Grade found that petitioner was sincere in his beliefs and convictions, but both characterized the beliefs as essentially philosophical rather than religious and indicated that the beliefs did not appear to have been thoroughly tested by discussions with others. Petitioner's request for discharge was reviewed by an established Board in the Bureau of Naval Personnal (hereinafter the Bureau). Pursuant to DOD 1300.6 the request was then referred to the Director of Selective Service for an advisory opinion. The Director of Selective Service advised the Bureau that petitioner would not be classified as a conscientious objector if he were being considered for induction at that time. Petitioner's request was then thoroughly reviewed again by an established Board and based upon an independent evaluation of the information in the application the Board recommended that petitioner not be discharged on the ground of conscientious objection (Ex. 7). The reason given by the Board for the decision was that "petitioner's desire to avoid military service is not based on religious principles". Upon notification that his application for discharge had been rejected, petitioner submitted a second application (Ex. 3). Subsequent to the filing of the petition for a writ of habeas corpus, the second application was returned to petitioner by the Commandant of the Ninth Naval District pursuant to DOD 1300.6 on the ground that the application was substantially the same as the initial application which had been denied.

Petitioner contends that there is no basis in fact for the denial of his application for discharge since his conscientious objection to participation in war is based on beliefs that crystalized after he entered the naval reserve, he is sincere in those beliefs, and those beliefs are religious as defined by law. Petitioner contends that the refusal to grant his request for discharge from the naval reserve deprives him of rights secured to him by the due process clause of the Fifth Amendment to the Constitution of the United States.

Respondents make two threshold jurisdictional contentions: (1) that respondents have no authority to grant petitioner a discharge; that respondents have no authority, therefore, to grant the relief requested; and that, therefore, the petition should be dismissed for failure to join the proper parties; and (2) that the court lacks jurisdiction to entertain a collateral attack on an administrative decision where, as here, there has been no deviation from the proper procedures and no abuse of discretion.

■■ Respondents' initial contention is that they have no authority to discharge petitioner; that as provided in DOD 1300.6, paragraph VI(c) (1) the Military Department is the proper authority authorized to discharge petitioner. A similar contention was raised in Gann v. Wilson, 289 F.Supp. 191 (N.D. Calif.1968), and rejected without discussion. It is well established that the respondent named in a petition for a writ of habeas corpus should be the person within the territorial jurisdiction of the court who has custody of the petitioner and is capable of producing him in court. See *e.g.,* Dunbar v. Cranor, 202 F.2d 949, 950 (9th Cir.1953); United States ex rel. Goodman v. Roberts, 152 F.2d 841, 842 (2d Cir.) cert. denied 328 U.S. 873, 66 S.Ct. 1377, 90 L.Ed. 1642 (1946); Jones v. Biddle, 131 F.2d 853, 854 (8th Cir.1942) cert. denied 318 U.S. 784, 63 S.Ct. 856, 87 L.Ed. 1152 (1943). I conclude, therefore, that the petition names the proper parties as respondents. Cf. Commanding Officer United States Army Base, Camp Breckinridge, Ky. v. United States ex rel. Bumanis, 207 F.2d 499 (6th Cir.1953); United States ex rel. Altieri v. Flint, 54 F.Supp. 889 (D.Conn.1943) aff'd 142 F. 2d 62 (2d Cir.1944).

■ Respondents also contend that this court lacks jurisdiction to entertain a collateral attack on the administrative decision rejecting petitioner's request for a discharge. Respondents assert that a review of such a decision by this court is precluded by DOD 1300.6 paragraph VI (E), which provides, "Determinations by the Military Department, in accordance with the facts of the case and the guidelines furnished herein, shall be final with respect to the administrative separation of its members." Recent cases, however, support the proposition that a federal court has jurisdiction to review a decision by military authorities refusing to grant a discharge on the ground of conscientious objection to a member of the armed forces and to order such member released when no basis in fact exists for the refusal. See In re Kelly, 401 F.2d 211 (5th Cir.1968); Hammond v. Lenfest, 398 F.2d 705 (2d Cir.1968); Brown v. McNamara, 387 F. 2d 150 (3d Cir.1967) cert. denied Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968); Cooper v. Barker, 291 F.Supp. 952 (D.Md.1968); Gann v. Wilson, 289 F.Supp. 191 (N.D. Calif.1968); Crane v. Hedrick, 284 F. Supp. 250 (N.D.Calif.1968).

■ Respondents also appear to contend that this court should refuse to accept jurisdiction because petitioner has not exhausted all the remedies afforded him by the military. Respondents' position appears to be that petitioner may raise the claim asserted here as a defense to court-martial proceedings. For this proposition respondents cite Noyd v. McNamara, 267 F.Supp. 701 (D.Colo) aff'd 378 F.2d 538 (10th Cir.) cert. denied 389 U.S. 1022, 88 S.Ct. 593, 19 L. Ed.2d 667 (1967). It is possible to read Noyd v. McNamara, *supra,* as standing for nothing more than the proposition that courts will not interfere with mili-

tary duty assignments. See Noyd v. McNamara, *supra*, 378 F.2d at 540; Hammond v. Lenfest, *supra*, 398 F.2d at 713; Crane v. Hedrick, *supra*, 284 F. Supp. at 252. To the extent that *Noyd* might stand for a broader requirement that court-martial proceedings are a prerequisite to presentation of a claim such as the one at bar to a federal court, its reasoning was expressly rejected by Hammond v. Lenfest, *supra*, 398 F.2d at 713. See also In re Kelly, *supra*. I conclude that this court has jurisdiction to review the determination by naval authorities rejecting petitioner's request for discharge on the ground that he is a conscientious objector. I further conclude that this court should not decline to accept jurisdiction on the ground that petitioner has not yet raised his claim as a defense in court-martial proceedings. I, therefore, proceed to a consideration of the merits of petitioner's claim.

With respect to the merits of petitioner's contention, respondents assert that there exists a basis in fact for the disallowance of petitioner's request for a discharge. There appears to be no dispute that petitioner is sincere in the beliefs upon which his conscientious objection to participation in war is based, nor does there appear to be any dispute that these beliefs crystalized after petitioner entered the naval reserve. The only question is whether the nature of those beliefs is religious. DOD 1300.6 paragraph IV(B) (3), (6) provides that the same standard used in determining the conscientious objector classification of draft registrants prior to induction shall be applied in determining whether to grant a discharge on the grounds of conscientious objection to participation in war. The standard to be applied in determining the conscientious objector classification of registrants prior to induction is set forth in Section 6(j) of the Selective Service Act of 1967 (hereinafter the 1967 Act), 50 U.S.C. App. § 456(j), which provides in pertinent part:

"Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a personal moral code. * * *"

■ The scope of review which this court must apply to the situation at bar is the extremely limited "no basis in fact" standard customarily applied in judicial review of Selective Service classifications. Hammond v. Lenfest, *supra*, 398 F.2d at 716; see United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) (quoting from Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946) ). The test was initially applied to review of Selective Service classifications in Estep v. United States, *supra*, although it previously had been applied as the scope of judicial inquiry in deportation cases where Congress had made the order of deportation "final". See Estep v. United States, *supra*, at 123, 66 S.Ct. 423 n. 14. "It means that the courts are not to weigh the evidence to determine whether the classification * * * was justified." Estep v. United States, *supra*, at 122, 66 S.Ct. at 427.

■■ Respondents assert that a basis in fact does exist for the denial of petitioner's request for a discharge. Respondents contend that petitioner's conscientious objection to participation in war is based on philosophical rather than religious grounds. For this proposition respondents cite not only the explanation of his beliefs supplied by petitioner, but also the opinions of Chaplain Turner and respondent Grade. I conclude, however, that the opinions of Chaplain Turner and respondent Grade cannot, in themselves, provide a basis in fact for denial of the discharge. The basis in fact test relates to evidence with regard to matters of fact. Thus, if there is any factual evidence to support

a Selective Service classification, a federal court will not reverse that classification. Whether or not petitioner's beliefs upon which his conscientious objection is founded are to be characterized as "religious" within the meaning of 6(j) is not a matter of fact, but one of law. Therefore, an opinion as to the characterization to be given to those beliefs cannot in itself provide a basis in fact for the denial of the discharge.

It remains to be determined, therefore, whether petitioner's beliefs upon which his conscientious objection is founded are "religious" or, more precisely, "based on religious training and belief" within the meaning of Section 6(j). The analysis must begin with United States v. Seeger, *supra.* In that case the Supreme Court had occasion to construe the predecessor of Section 6(j). That provision was essentially the same as the present Section 6(j), the only difference being that "religious training and belief" was defined as "an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation but [not including] essentially political, sociological or philosophical views or a merely personal moral code". The Supreme Court construed "religious training and belief" as follows:

"Within that phrase would come all sincere religious beliefs which are based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent. The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition. This construction avoids imputing to Congress an intent to classify different religious beliefs, exempting some and excluding others, and is in accord with well-established congressional policy of equal treatment for those whose opposition to service

is grounded in their religious tenets." 380 U.S. at 176, 85 S.Ct. at 859.

In enacting the Selective Service Act of 1967, Congress deleted from the definition of "religious training and belief" in Section 6(j) the phrase "an individual's belief in relation to a Supreme Being involving duties superior to those arising from any human relation". The bill passed by the House originally eliminated the remainder of the definition as well. The House Report contains the following explanation of the change:

"The provision of existing law relating to conscientious objectors has been the subject of considerable controversy within recent months. This controversy was primarily the result of a 1964 Supreme Court decision in U. S. v. Seeger (380 U.S. 163 [85 S. Ct. 850, 13 L.Ed.2d 733]) in which the Supreme Court held that the test of conscientious objection is 'a sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption * * *'. The Supreme Court decision resulted in a significant broadening of the basis on which claims for conscientious objection can be made.

"The Director of Selective Service advised the Committee on Armed Services that in his judgment this undue expansion of the provision of the law relating to conscientious objection could very easily result in a substantial increase in the number of unjustified appeals for exemption from military service based upon this provision of law.

"This circumstance coupled with the committee's awareness that the processing of conscientious objector appeals has resulted in delays exceeding 2 years, prompted the committee to completely rewrite this provision of the law.

"This provision of the law as rewritten by the committee and contained in this bill would nonetheless

continue to recognize legitimate claims for classification of registrants as conscientious objectors. However, the committee language requires that the claim for conscientious objection must be based upon 'religious training and belief' as has been the original intent of the Congress in drafting this provision of the law." H.R.Rep. No. 267, 90th Cong. 1st Sess., 1967 United States Code Congressional and Administrative News, Vol. 1, pp. 1333–1334. The bill which passed the Senate contained no change in the conscientious objector provision. In conference it was agreed that the second phrase of the definition, that is, "does not include essentially political, sociological, or philosophical views, or a merely personal moral code", should remain as a clarification of "religious training and belief". The conference report contains the following explanation of the change intended to be worked by the amendment:

"The Senate conferees also concurred in the desire of the House language to more narrowly construe the basis for classifying registrants as 'conscientious objectors.' The recommended House language required that the claim for conscientious objection must be based upon 'religious training and belief' as had been the original intent of Congress in drafting this provision of the law.

"The Senate conferees were of the opinion that congressional intent in this area would be clarified by the inclusion of language indicating that the term 'religious training and belief' as used in this section of the law 'does not include 'essentially political, sociological, or philosophical views, or a merely personal moral code.'

"The House conferees concurred in the Senate recommendation.

"The Sentate therefore recedes from its position and accepts the House language with an amendment." Conf. Rept. No. 346, 90th Cong. 1st Sess., 1967 United States Code Congressional and Administrative News, Vol. 1, p. 1360.

It is apparent that Congress sought by the change in Section 6(j) to restrict in some manner the availability of conscientious objector status. It is unclear exactly what the nature of change intended to be effected was, however, although it appears that there was dissatisfaction with the *Seeger* case. In the absence of any definite indication of what change was intended to be effected by the 1967 Act, it is difficult to arrive at a construction of "religious training and belief" which varies substantially from the test set forth in the *Seeger* case.

Moreover, although United States v. Seeger, *supra*, purports merely to construe the language of the statute, the opinion clearly has substantial constitutional overtones and has been so interpreted. See United States v. Sisson, 297 F.Supp. 902, 909 (D.Mass.1969); Note, The Conscientious Objector and the First Amendment: There but for the Grace of God, 34 U.Chi.L.Rev. 79 (1966); Hugh C. Macgill, Selective Conscientious Objection: Divine Will and Legislative Grace, 54 Va.L.Rev. 1355 (1968); Robert L. Rabin, When is a Religious Belief Religious: United States v. Seeger and the Scope of Free Exercise, 51 Cornell L.Q. 231 (1966); Abner Brodie and Harold P. Southerland, Conscience, The Constitution, and the Supreme Court: The Riddle of United States v. Seeger, 1966 Wis.L.Rev. 306; John H. Mansfield, Conscientious Objection—1964 Term, 1965 Religion and the Public Order 3. I conclude that to construe the phrase "religious training and belief" more narrowly than it was construed by the Supreme Court in the *Seeger* case would raise grave questions of constitutionality under the First and Fifth Amendments to the Constitution. See Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); cf. Everson v. Board of Education, 330 U.S. 1, 15–16, 67 S.Ct. 504, 91 L.Ed. 711 (1947). Accordingly, I consider that the standard announced in United States v. See-

ger, *supra*, is applicable to this case despite the change in language which appears in Section 6(j) of the 1967 Act and the apparent intention of Congress to restrict the effect of that case.

 From the explanation of his beliefs which petitioner attached to his application for discharge it appears that those beliefs come well within the standard announced in United States v. Seeger, *supra*. The nature of petitioner's beliefs may be summarized as follows. Petitioner believes in a "Supreme Being" which he defines as "the uncreated existence in which we are all united" and "the end toward which all existence strives". He explains that most forms of existence, and indeed most men, are unaware of their unity with all other forms of existence. Petitioner asserts that man's task is to attain "the self-realization that his essence is that of the Supreme Being". Petitioner describes his own ultimate duty "to consist of establishing a climate of spiritual freedom in which self-realization can be accomplished". He explains that he recognizes certain actions as inconsistent with the end toward which he asserts his beliefs strive. War, petitioner asserts, is the most obvious of these actions and he, therefore, finds himself unable to participate in war in any form.

Petitioner's explanation of his beliefs clearly falls within the Supreme Court's description of religious beliefs:

> "Some believe in a purely personal God, some in a supernatural deity; others think of religion as a way of life envisioning as its ultimate goal the day when all men can live together in perfect understanding and peace. There are those who think of God as the depth of our being; others such as the Buddhists, strive for a state of lasting rest through self-denial and inner purification; in Hindu philosophy, the Supreme Being is the transcendental reality which is truth, knowledge and bliss." 380 U.S. at 174–175, 85 S.Ct. at 858.

I conclude that petitioner's conscientious objection to participation in war is based on "religious training and belief" within the meaning of Section 6(j) of the 1967 Act, 50 U.S.C.App. § 456(j) and, accordingly, that he should have been granted a discharge from the naval reserve pursuant to DOD 1300.6 and BUPERSINST 1900.5.

The petition for a writ of habeas corpus is hereby granted, and it is hereby ordered, subject to the stay to be specified, that petitioner be released from the custody of the United States Navy and the custody of the respondents.

The effect of this order is stayed until July 28, 1969, to allow respondents, should they choose to do so, to seek a further stay from the Court of Appeals for the Seventh Circuit.