UNITED STATES of America

v.

**Corliss LAMONT, Defendant.**

UNITED STATES of America

v.

**Abraham UNGER, Defendant.**

UNITED STATES of America

v.

**Albert SHADOWITZ, Defendant.**

United States District Court
S. D. New York.
July 27, 1955.

28

Philip Wittenberg, New York, N. Y., for defendant Lamont, Irving Like, of counsel.

David M. Freedman, New York, N. Y., for defendant Unger.

Shapiro, Rabinowitz & Boudin, New York, N. Y., for defendant Shadowitz, Victor Rabinowitz, New York City, of counsel.

J. Edward Lumbard, U. S. Atty., New York City, for the United States, Lloyd F. MacMahon, Chief Asst., New York City, Boudinot P. Atterbury, New York City, Judson A. Parsons, Jr., Rochester, N. Y., George H. Bailey, New York City, of counsel.

WEINFELD, District Judge.

These are motions to dismiss indictments returned separately against each defendant charging him with violations of 2 U.S.C.A. § 192 in refusing to answer specific questions before the Permanent Subcommittee on Investigations of the Senate Committee on Government Opera-

tions. Each defendant attacks the validity of the indictment upon constitutional and other grounds. Since the motions present issues of law common to each indictment they may be considered together. The indictments are identical, except for the dates of the hearings and the refusals to answer, each of which is the subject of a separate count.

The indictment against the defendant Abraham Unger is typical. It charges:

"Introduction

"1. On or about the 17th day of September, 1953, in the Southern District of New York, the Permanent Subcommittee on Investigations of the Committee on Government Operations was holding hearings pursuant to Public Law 601, 79th Congress, Second Session, Chapter 753 [60 Stat. 812], as amended; Senate Resolution No. 180, 81st Congress, Second Session, dated February 1, 1950; Senate Resolution 280, 82nd Congress, Second Session, dated March 3, 1952; Senate Resolution 40, 83rd Congress, First Session, dated January 30, 1953.

"2. The defendant, Abraham Unger having been summoned as a witness by the authority of the United States Senate to give testimony, appeared as a witness before the Permanent Subcommittee aforesaid at the place and on the date above stated, and was asked questions which were pertinent to the question then under inquiry. At the place and times stated, the defendant refused to answer those pertinent questions. The allegations of this introduction are adopted and incorporated into the counts of this indictment, which follow, the same as if set forth therein in extenso, each of which counts will, in addition merely describe the questions which were asked of the defendant, Abraham Unger and which he refused to answer. (Title 2, United States Code, Section 192).

"Count 1. Were you active in the Professional Communist Group in New York?

"Count 2. Were you head of the Professional Group of the Communist Party in New York?

"Count 3. Are you a member of the Communist Party as of this moment?

"Count 4. Do you know whether you are a member of the Communist Party? (Title 2, Section 192, United States Code.)"

The first ground of the defendants' attack is that the indictment fails to set forth the essential elements necessary to charge a crime under § 192, which provides:

"Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor * * *."

■ The requirement that every ingredient of the offense charged must be clearly and accurately alleged in the indictment is compelled by the Sixth Amendment to the Constitution and is specifically directed by Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. This is a matter of substance and not of form.[1] The underlying reason is of course to assure that the accused shall be informed of the nature of the charge so that he may defend himself and not be taken by surprise upon the trial and further to protect him against another prosecution based on the

1. United States v. Hess, 124 U.S. 483, 488, 489, 8 S.Ct. 571, 31 L.Ed. 516; United States v. Carll, 105 U.S. 611, 613, 26 L. Ed. 1135; The Schooner Hoppet & Cargo v. United States, 7 Cranch 389, 394, 3 L.Ed. 380.

same facts.[2] Another reason, and one sometimes overlooked, is to enable the court to decide whether the facts alleged are sufficient in law to withstand a motion to dismiss the indictment or to support a conviction in the event that one should be had.[3]

The requirement, that the indictment clearly define the essential elements of the crime charged, the importance of which was fully expounded by Mr. Chief Justice Marshall in the early case of The Schooner Hoppet & Cargo v. United States,[4] has consistently been adhered to by the Supreme Court in a long series of decisions.[5] Thus in United States v. Hess, the Court held:

"The general, and with few exceptions, of which the present is not one, the universal rule, on this subject, is, that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment, or implication, and the charge must be made directly and not inferentially, or by way of recital." [6]

The rule was reiterated and underscored in Ledbetter v. United States:

"We have no disposition to qualify what has already been frequently decided by this court, that where the crime is a statutory one it must be charged with precision and certainty, and every ingredient of which it is composed must be clearly and accurately set forth, and that even in the cases of misdemeanors the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged." [7]

On the argument of these motions the defendants contended the indictment was defective since it failed to plead that the refusals to answer were "willful".

■■ The government took the contrary view, relying upon United States v. Josephson,[8] which held "refusal to answer any question pertinent to any matter under inquiry is a violation of the second branch of the statute as much when the refusal is 'willful' as when it is not." Since the argument of the motion, the Supreme Court has resolved this issue, and it is now beyond peradventure that "Section 192, like the ordinary federal criminal statute, requires a criminal intent—in this instance, a deliberate, intentional refusal to answer.[33] This element of the offense, like any other, must be proved beyond a reasonable doubt." [9]

2. United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92; Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; Wong Tai v. United States, 273 U.S. 77, 80–81, 47 S.Ct. 300, 71 L.Ed. 545.

3. United States v. Cruikshank, 92 U.S. 542, 558–559, 23 L.Ed. 588; United States v. Hess, 124 U.S. 483, 487, 8 S.Ct. 571, 31 L.Ed. 516; Evans v. United States, 153 U.S. 584, 587, 14 S.Ct. 934, 38 L.Ed. 830.

4. 7 Cranch 389, 3 L.Ed. 380.

5. United States v. Cook, 17 Wall. 168, 174, 21 L.Ed. 538; United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; United States v. Simmons, 96 U.S. 360, 24 L.Ed. 819; United States v. Carll, 105 U.S. 611, 26 L.Ed. 1135; United States v. Hess, 124 U.S. 483, 8 S.Ct. 571; Evans v. United States, 153 U.S. 584, 14 S.Ct.

934; Cochran and Sayre v. United States, 157 U.S. 286, 15 S.Ct. 628, 39 L.Ed. 704; Ledbetter v. United States, 170 U.S. 606, 18 S.Ct. 774, 42 L.Ed. 1162; Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288. See also Sutton v. United States, 5 Cir., 157 F.2d 661.

6. 124 U.S. 483, 486, 8 S.Ct. 571, 573, 31 L.Ed. 516.

7. 170 U.S. 606, 609–610, 18 S.Ct. 774, 775.

8. 2 Cir., 165 F.2d 82, 86.

9. Quinn v. United States, 349 U.S. 155, 165, 75 S.Ct. 668, 674: "Sinclair v. United States, 279 U.S. 263, 299 [49 S.Ct. 268, 273, 73 L.Ed. 692]. See also In re Chapman, 166 U.S. 661, 672 [17 S.Ct. 677, 681, 41 L.Ed. 1154], in which the Court, while upholding the constitutionality of the statute, recognized deliberateness as an element of the offense."; Emspak v. United States, 349 U.S. 190, 202,

Thus, the Supreme Court held that where a witness raises an objection to a question or challenges the authority of the committee, he must be clearly apprised that the committee demands his answer notwithstanding his objections— and failing such a direction to the witness the requisite criminal intent necessary to support a conviction under § 192 is absent.

■ Since willfulness, or a deliberate, intentional refusal to answer,[10] is an essential element of the offense which the government must prove, it must also be pleaded in the indictment. Nor does the fact that the second clause of § 192 makes no reference to the willfulness of the refusal to answer eliminate the necessity to plead it, for, as the Supreme Court has long held:

"In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; and the fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent." [11]

■ Since the indictments fail to plead a willful or a deliberate and intentional refusal to answer they are defective on this ground alone. However, I am of the view that they are further defective in failing to allege other essential elements of the offense laid under § 192.

■■ It is not every willful refusal to answer that offends the statute. Other elements go to make up the crime. One, of course, is that the question which the witness declined to answer was pertinent to the question under inquiry. And pertinency must be "pleaded".[12] This the present indictment does, but even the addition of this element does not establish this crime. More is required. The essence of the interdicted offense is the contumacious refusal of a witness to answer a question pertinent to an inquiry before a lawfully constituted committee, acting within the scope of its authority.

■ No committee of either the House or Senate, and no Senator and no Representative, is free on its or his own to conduct investigations unless authorized. Thus it must appear that Congress empowered the Committee to act, and further that at the time the witness allegedly defied its authority the Committee was acting within the power granted to it.

■ While the Congress is possessed of broad powers to conduct investigations necessary for the performance of its constitutional functions and may, and usually does, delegate these powers to committees, there are outer limits to the power, whether exercised directly by the Congress or any of its committees. From Kilbourn v. Thompson [13] down to

75 S.Ct. 687; Bart v. United States, 349 U.S. 219, 221–222, 75 S.Ct. 712. Cf. United States v. Murdock, 284 U.S. 141, 148, 52 S.Ct. 63, 76 L.Ed. 210.

10. Cf. United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381.

11. United States v. Carll, 105 U.S. 611, 612–613, 26 L.Ed. 1135; United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; United States v. Simmons, 96 U.S. 360, 24 L.Ed. 819; Morissette v. United States,

342 U.S. 246, 270, note 30, 72 S.Ct. 240, 96 L.Ed. 288; Sutton v. United States, 5 Cir., 157 F.2d 661, 663; Lowenburg v. United States, 10 Cir., 156 F.2d 22, 23; United States v. Goldberg, D.C.D.Minn., 123 F.Supp. 385, 388; United States v. Callanan, D.C.E.D.Mo., 113 F.Supp. 766.

12. Sinclair v. United States, 279 U.S. 263, 296, 49 S.Ct. 268, 73 L.Ed. 692.

13. 103 U.S. 168, 26 L.Ed. 377. While the authority of Kilbourn v. Thompson has

Quinn v. United States, the Supreme Court has steadfastly held that the congressional power to investigate is not boundless. The restrictions upon this power have been sharply delineated by Mr. Chief Justice Warren: "But the power to investigate, broad as it may be, is also subject to recognized limitations. It cannot be used to inquire into private affairs unrelated to a valid legislative purpose. Nor does it extend to an area in which Congress is forbidden to legislate." [14]

Thus the power exercised by a committee of the Congress must be within both the authority delegated to it and also within the competence of the Congress to confer upon the committee.[15] And obviously a committee cannot confer upon any of its subcommittees greater powers than it possesses. Accordingly, "a witness rightfully may refuse to answer where the bounds of the power are exceeded * * *." [16]

And of course what this adds up to is that to succeed, any charge under § 192 must establish that the investigation was within the power of the committee. This view finds more than ample support in the Rumely case [17] where Mr. Justice Frankfurter said: "Since the Court of Appeals thus took a view of the committee's authority contrary to that adopted by the House in citing Rumely for contempt, we granted certiorari. 344 U.S. 812, 73 S.Ct. 16 [97 L.Ed. 633]. This issue—whether the committee was authorized to exact the information which the witness withheld —must first be settled before we may consider whether Congress had the power to confer upon the committee the authority which it claimed."

If the government contends, as eventually it must to sustain a conviction, that the Permanent Subcommittee on Investigations was a duly authorized committee and engaged in conducting an investigation within the scope of delegated authority,[18] then this, together with the source of its claimed authority, whether it be a resolution of the Senate or the parent committee,[19] should be alleged in the indictment. There is an added reason why this element should be pleaded. With pertinency also an essential element, it is important for the defendant in preparing his defense to know the claimed source of authority since "The initial step in determining the pertinency of the question is to ascertain the subject matter of the inquiry

been questioned from time to time, cf. United States v. Rumely, 345 U.S. 41, 46, 73 S.Ct. 543, 97 L.Ed. 770, it appears to have been revitalized by the reliance placed upon it by the Supreme Court in the Quinn case, 349 U.S. 155, 161, 75 S.Ct. 668. See also McGrain v. Daugherty, 273 U.S. 135, 175–176, 47 S.Ct. 319, 71 L.Ed. 580.

14. Quinn v. United States, 349 U.S. 155, 161, 75 S.Ct. 668, 672. And of course the congressional power to investigate does not permit intrusion upon a witness' constitutional rights. However, in the instant case none of the defendants asserted his constitutional privilege against self-incrimination under the Fifth Amendment, but did claim (in addition to challenging the authority of the committee) that the purported inquiry violated his rights under the First Amendment.

15. United States v. Orman, 3 Cir., 207 F. 2d 148, 153.

16. Sinclair v. United States, 279 U.S. 263, 291, 49 S.Ct. 268, 271, 73 L.Ed. 692; McGrain v. Daugherty, 273 U.S. 135, 176, 47 S.Ct. 319, 71 L.Ed. 580.

17. 345 U.S. 41, 42, 73 S.Ct. 543, 544, 97 L.Ed. 770.

18. Apparently the Government's position is that the thrust of the powers of the Committee on Government Operations extended to investigations into subversive activities insofar as these undermined the efficiency of operation of government agencies and also to appropriations to various agencies which it is claimed might have been infiltrated. However, this argument fails to meet the basic question, "Was any power ever delegated to the Permanent Subcommittee to conduct the inquiry?"

19. Cf. United States v. DiCarlo, D.C.N.D. Ohio, 102 F.Supp. 597.

then being conducted by the subcommittee." [20] Or, as stated by Mr. Justice Frankfurter in the Rumely case, the resolution under which the committee purports to act is the "controlling charter" of its powers and governs "its right to exact testimony." [21] Since pertinency must be and has been pleaded, there is no logical reason why the authority of the committee should not likewise be pleaded.

The defendants contend that the Permanent Subcommittee on Investigations of the Senate Committee on Government Operations was not an authorized committee, and further that even if it were, its inquiry exceeded the scope of its authority, and finally that its parent committee, the Committee on Government Operations, likewise lacked authority to conduct the investigation.

■ The indictment fails to allege that the Permanent Subcommittee on Investigations before which the refusal to answer occurred was a duly authorized committee of the Senate. It simply states that it was "holding hearings pursuant to Public Law 601, 79th Congress, Second Session, Chapter 753, as amended; Senate Resolution No. 180, 81st Congress, Second Session, dated February 1, 1950; Senate Resolution 280, 82nd Congress, Second Session, dated March 3, 1952; Senate Resolution 40, 83rd Congress, First Session, dated January 30, 1953."

Thus the basic issue is, assuming arguendo that the Committee on Government Operations had power to conduct the inquiry in question, whether that power was ever delegated to the Permanent Subcommittee on Investigations under the foregoing references. One vainly examines the Public Law and Senate Resolutions set forth in the indictment to find any reference to the Permanent Subcommittee, let alone any delegation of power to it.

Public Law 601 is the Reorganization Act of 1946 which streamlined Senate Committees and established various standing committees, among which was the Committee on Expenditures in the Executive Departments (later renamed the Committee on Government Operations). The basic power granted to this committee was to inquire into " * * * operation and Government activities at all levels with a view to determining its economy and efficiency" and "intergovernmental relationships * * * between the United States and international organizations of which the United States is a member." [22] However, it does not mention the Permanent Subcommittee on Investigations. The same statute gives each standing committee and their subcommittees the power to conduct investigations, but this grant is limited to matters within their respective jurisdictions.[23]

Senate Resolution 180 provides that committees and their subcommittees may fix not less than one-third of their membership as a quorum for the transaction of business and a number less than one-third as a quorum to take testimony, but it in no way grants substantive powers to any committee.

Senate Resolution 280 merely changes the name of the "Committee on Expenditures in the Executive Departments" to the "Committee on Government Operations".

Senate Resolution 40 simply appropriated moneys to the Committee on Government Operations or to "any duly authorized subcommittee thereof." Again there is no mention of the Per-

---

**20.** Bowers v. United States, 92 U.S.App. D.C. 79, 202 F.2d 447, 448.

**21.** United States v. Rumely, 345 U.S. 41, 44, 73 S.Ct. 543, 545, 97 L.Ed. 770.

**22.** 60 Stat. 812, 816, § 102, Par. (1) (g) (2) (B, D).

**23.** 60 Stat. 812, 831, § 134(a).

manent Subcommittee on Investigations.[24]

■ Thus the indictment is barren of any allegation or fact from which the authority of the Permanent Subcommittee to conduct the inquiry can be ascertained. The cornerstone of the Government's case in any prosecution under § 192 must be a lawfully constituted committee engaged in an inquiry within the scope of its authority when the refusal to answer occurred. This is the hard core of its case against the defendant and he is entitled to have it pleaded in the indictment. The obscurity of the committee's origin points up the need for such an allegation. It is not sufficient, as the Government now suggests, that this proof will be offered upon the trial. If the Grand Jury did not have before it prima facie evidence that the committee was empowered to conduct the inquiry whether by resolution or otherwise, there was no basis for the return of the indictment. "[A] wrongful indictment inflicts a substantial harm on the indicted person * * *."[25] And if in fact there was no grant of authority to the committee, or if it exercised powers in excess of the authority granted, or which could be granted, there is no reason why the defendants should be forced to trial. If the committee was duly empowered to act and conduct the inquiry, it is a comparatively simple matter to establish this fact and to en-

able a Grand Jury to make the appropriate allegation in the indictment. It may well be that some resolution or authorization exists but thus far it has not been revealed.

The indictment is silent as to the nature and scope of the inquiries. One must search the record of the hearings of the Permanent Subcommittee at which the alleged contempts occurred to determine this. As announced by the Chairman at these hearings, the stated purpose was to consider various aspects of alleged subversive activities and communist infiltration.[26] However the statement by the Chairman does not establish the committee's authority. It is not necessary in this posture of the case to determine whether, if in fact the Permanent Subcommittee was duly authorized, it, or indeed the parent committee, was empowered to conduct an inquiry with respect to subversive matters. That issue is reached only when some grant of authority to the Permanent Subcommittee has been alleged.

We are here dealing simply with a matter of pleading, but this is no technical or formal matter. It is a matter of importance not only to the defendants charged with a serious crime but also to the orderly conduct of congressional inquiries. The times in which we live have brought before the courts a flood of cases involving the congressional investigative power, its limitations, and

---

24. In passing it is interesting to note that the power to inquire into subversive activities which the Government urges is an incident of the Parent Committee's powers appears to be negated by Senate Report No. 19 which accompanied Senate Resolution 40: "Under this resolution the Permanent Subcommittee on Investigations will inquire into the administration of Government agencies to see wherein economies may be affected. It is also intended that certain aspects of improper influence in Government shall be investigated, but any inquiries undertaken will in no way interfere or transgress those investigations which other Senate and House of Representatives Committees may be engaged in making in com-

parable areas of Government operations, such as subversive activities." And attached to this report was a letter by the Chairman of the Committee on Government Operations (who was also the Chairman of the Permanent Subcommittee on Investigations) that its purpose was to determine what "savings can be effected in specific cases of inefficiency and waste."

25. In re Fried, 2 Cir., 161 F.2d 453, 465, 1 A.L.R.2d 996.

26. Hearings of Permanent Subcommittee on Investigations, Vol. 138, p. 14638; Hearing of September 15, 1953, pp. 43, 70; Hearing of December 16, 1953, p. 240.

the rights of witnesses called before such investigative bodies. The recurrence of many aspects of the problem has moved the Supreme Court to comment "* * * [W]e would have to be that 'blind' Court, against which Mr. Chief Justice Taft admonished in a famous passage, * * * that does not see what '[a]ll others can see and understand' not to know that there is wide concern, both in and out of Congress, over some aspects of the exercise of the congressional power of investigation." [27]

Here the authority of the committee to act is seriously challenged. The challenge finds support in the failure of the very statutes and resolutions referred to in the indictment to disclose that any power to conduct the particular inquiry was ever delegated to it.[28] Whether the committee was ever vested with power should not be a matter of guesswork on the part of the defendant charged with a crime. And if a defendant is to have a fair opportunity to defend himself he is entitled to be informed of the charge and to have the indictment specify that the committee whose authority he allegedly flouted was duly authorized to conduct the inquiry—just as the indictment must plead every other essen-

tial element. An element of crime is an essential factor without which there is no crime.[29] And if no authority was ever delegated to the Permanent Subcommittee by the parent committee or the Senate, there is no basis for prosecution under § 192 no matter how contumacious a witness might have been.

The fact that the Senate subsequently cited the defendants for contempt of the committee does not cure the indictment's deficiency in failing to allege due authority in the Permanent Subcommittee. First, because without the allegation no offense is charged, and second, as Mr. Justice Frankfurter pointed out: The contempt citation "after the controversy had arisen * * * had the usual infirmity of *post litem motam,* self-serving declarations. In any event, Rumely's duty to answer must be judged as of the time of his refusal. The scope of the resolution defining that duty is therefore to be ascertained as of that time and cannot be enlarged by subsequent action of Congress." [30] Nor is it an answer to suggest that a presumption of regularity supports the committee's purported authority to act since that presupposes a prior grant of authority.[31]

27. United States v. Rumely, 345 U.S. 41, 44, 73 S.Ct. 543, 545, 97 L.Ed. 770.

28. The situation here is far different from that in cases where the indictment referred to a resolution which, in turn, set forth the committee's power. In those cases the court had before it a specific pleading of the committee's authority to conduct the inquiry at which the defendant had been called. Sinclair v. United States, 279 U.S. 263, 285–289, 49 S.Ct. 268, 73 L.Ed. 692; In re Chapman, 166 U.S. 661, 663, 17 S.Ct. 677, 41 L. Ed. 1154; Bowers v. United States, 92 U.S.App.D.C. 79, 202 F.2d 447, 448; Eisler v. United States, 83 U.S.App.D.C. 315, 170 F.2d 273, 280; United States v. Josephson, D.C.S.D.N.Y., 74 F.Supp. 958, 959; Id., 2 Cir., 165 F.2d 82, 84–85; United States v. Fields, D.C.D.C., 6 F. R.D. 203, 204. It is significant, although not necessarily controlling, that in every case except those involving this committee

examined by the Court, or called to the Court's attention, in which reference is made to the indictment, it unmistakably appears that the authority of the committee to conduct the investigation was either pleaded in haec verba or incorporated by reference.

29. United States v. Winnicki, 7 Cir., 151 F.2d 56, 58.

30. United States v. Rumely, 345 U.S. 41, 48, 73 S.Ct. 543, 547, 97 L.Ed. 770.

31. This makes inapplicable the cases relied upon by the Government, such as McGrain v. Daugherty, 273 U.S. 135, 47 S. Ct. 319, 71 L.Ed. 580; United States v. Josephson, D.C.S.D.N.Y., 74 F.Supp. 958; United States v. Emspak, D.C.D.C., 95 F.Supp. 1012, 1014; United States v. Bryan, D.C.D.C., 72 F.Supp. 58, since the resolution under which the committee or the Congress purported to act was spec-

Moreover, substantially the same contention, but made with respect to the element of pertinency, was rejected by the Supreme Court on the ground that "the stronger presumption of innocence attended the accused at the trial. It was therefore incumbent upon the United States to *plead* and show that the question pertained to some matter under investigation." [32]

In sum, I hold that to validly charge a defendant with a violation of § 192 of Title 2, the indictment must plead the following essential elements: (1) that the committee before which the alleged refusal to answer occurred was duly empowered by either House of Congress to conduct the particular inquiry, setting forth the source of this authority; (2) that the inquiry was within the scope of the authority granted to the committee; [33] (3) that the questions which the witness declined to answer were pertinent to the subject matter of the inquiry then being conducted by the committee; and (4) that the witness' refusal to answer was willful, or deliberate and intentional.

Since these indictments fail to allege the first, second and fourth elements they must fall.

This disposition makes it unnecessary to determine the constitutional and other questions so vigorously pressed for disposition by the defendants.

The motion to dismiss the indictment is granted in each case.

Settle order on notice.

ified in those indictments and was before the Court.

32. Sinclair v. United States, 279 U.S. 263, 296–297, 49 S.Ct. 268, 273, 73 L.Ed. 692 (emphasis supplied).

33. Cf. Form of indictment set forth in Eisler v. United States, 83 U.S.App.D.C. 315, 170 F.2d 273, 280, note 8.