Benedict KUDISH, M.D., Plaintiff, Appellant,

v.

Robert E. BRADLEY, Executive Director of the Board of Registration and Discipline in Medicine, et al., Defendants, Appellees.

No. 82–1521.

United States Court of Appeals, First Circuit.

Argued Dec. 6, 1982.

Decided Jan. 25, 1983.

Paul D. Yahoodik, Everett, Mass., for plaintiff, appellant.

Carl Valvo, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendants, appellees.

Before CAMPBELL and BREYER, Circuit Judges, and SMITH,* Senior District Judge.

RUSSELL E. SMITH, District Judge.

Plaintiff-appellant was at one time licensed to practice medicine in the State of Massachusetts. On January 6, 1978, he was charged in seven criminal complaints with violations of the Massachusetts controlled substance law. As a result of plea bargaining, it was agreed that, if plaintiff would resign from the practice of medicine, the criminal charges would be placed on file without any findings. In execution of that agreement, plaintiff resigned by a document in affidavit form dated May 16, 1978, sworn to before his lawyer acting as a notary public. The affidavit stated in part: "I desire to voluntarily resign from the practice of medicine; ... I realize that this resignation is a final act which deprives me of all privileges of registration and is *not subject to reconsideration or judicial review* ...." (Emphasis added.) The Board of Registration and Discipline in Medicine (Board) voted to accept the resignation on May 26, 1978.

* Of the District of Montana, sitting by designation.

Subsequently the cases were placed on file without any findings. The Board held no hearings. Thereafter the plaintiff made several applications for reinstatement. The Board refused these applications on the ground that the resignation had been final. Ultimately the Board ordered that plaintiff "cease and desist filing for reinstatement of his license."

While it is stated by way of conclusion that the plaintiff acted under duress in signing the resignation, there is no suggestion of any kind that the criminal charges were improperly filed or that plaintiff was under pressure of any kind, except that pressure which naturally flows from the pendency of criminal charges. No claim is made that plaintiff was under any handicap or was deceived in any way.

In 1976, Massachusetts law[1] gave to the Board power to investigate and, after hearing, to "revoke, suspend, or cancel the certificate of registration . . . or otherwise discipline a physician . . . upon proof . . . that said physician" had engaged in specified acts of misconduct. The Board was given broad power to adopt rules and regulations governing the practice of medicine. The language of the statute is: "[N]othing in this section shall be construed to limit this general power of the board."

The Board adopted a regulation[2] providing the following:

(10) *Resignation.* A registrant who is named in a complaint or who is subject to an investigation by the Board or who is the defendant in a disciplinary action may submit his/her resignation by delivering to the Board a writing stating that: he/she desires to resign; his/her resignation is tendered voluntarily; he/she realizes that resignation is a final act which deprives a person of all privileges of registration and is not subject to reconsideration or judicial review; and that the registrant is not currently licensed to practice in any other state or jurisdiction, will make no attempt to gain licensure elsewhere, or will resign any other licenses contemporaneous with his/her resignation in the Commonwealth.

It is obvious that plaintiff's resignation was written to conform to the quoted language in the regulation, and that language could not state more clearly that one who resigns under the conditions set forth in the regulation has lost forever the right to practice medicine.

■ Plaintiff now argues that he was coerced. At the time plaintiff was charged, he was entitled to a trial with all of the protections that the Constitutions of Massachusetts and the United States afforded to people so charged. Before his license could have been revoked, he was entitled to be tried by the Board. We reiterate that there is no suggestion that any outside pressure was applied to require plaintiff to plea bargain. At any time before his plea bargain was accepted by the State plaintiff was just as free to walk away from the bargaining table as he was to walk to it. It is true that the plea bargain was not the same kind of a voluntary act as the choice of cheese rather than ice cream on apple pie is, but it was voluntary in the sense that the plaintiff made a deliberate choice between two evils and chose what he thought at the time to be the lesser of them. In this regard plaintiff relies on language in *Union Pacific Railroad v. Public Service Commission,* 248 U.S. 67, 70, 39 S.Ct. 24, 25, 63 L.Ed. 131 (1918), as follows: "Of course, it was for the interest of the Company to get the certificate. It always is for the interest of a party under duress to choose the lesser of two evils. But the fact that a choice was made according to interest does not exclude duress." This language, however, as the facts in the *Union Pacific* case indicate, means nothing more than that a choice of one of two evils is not voluntary if one of the choices is illegally compelled. The cited case is not persuasive because there the Public Service Commission demanded that the railroad pay an extortionate fee of $10,962.25 for the issuance of a certificate which was vital to

---

1. Mass.Gen.Laws Ann. ch. 112, § 5.

2. 243 Code of Mass. Regulations § 1.05(10); 12 Mass. Register 18 (July 6, 1976).

the railroad's operation. The legal fee was $250.00. The railroad had the choice of paying the excessive fee or suffering grave penalties. The railroad's choice was not voluntary, and the payment did not estop the railroad from recovering the illegal fee.

Plaintiff's next claim is that the Board denied him due process when it refused to hear his petition for reinstatement. That argument starts with the premise that a license to practice medicine, once acquired, is a valuable property right protected by the fourteenth amendment. That is true, but this plaintiff has resigned and does not now have a right to practice medicine. The fact that his resignation was final means that no due process rights can ever arise in support of an application for reinstatement. It is not a denial of due process when the finality of an order or judgment cuts off the right to have issues redetermined. Were the regulation requiring finality unconstitutional, some due process argument would be tenable, but we see no constitutional infirmity in the regulation. We think that any board having powers of discipline has the power to require a hearing when charges are made. The party charged has no right without the consent of the Board to dispense with the hearing, nor has he a right to postpone it indefinitely. It follows that, if the person charged in effect requests that there be no hearing, the Board has the power to grant the request on the condition that the resignation be final, as required by the regulations governing the Board here. Finality may be harsh, but the public has a right to have the facts of illegal conduct developed by a criminal trial and by a board hearing at a time when such conduct is recent history—when the witnesses are alive, the records extant, and the memories undiminished by time. If the resignation is not final, then, when a claimant gets around to filing an application for reinstatement, the state may find itself trying to prove charges that are true, but which, because of the passage of time, cannot be proved to be true. The requirement of finality, as it appears here, is entirely reasonable, is well within the authori-

ty of the Board, is not unfair, and in all respects is constitutional.

*The judgment is affirmed.*