**UNITED STATES of America, Plaintiff,**

v.

**H. Leonard BERG; Grimm DePanicis; Leon Lisbona; Solomon Schwartz, Defendants.**

**No. 84 CR 190 (S–3).**

United States District Court, E.D. New York.

Feb. 11, 1988.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Larry H. Krantz and Ira Belkin, Asst. U.S. Attys., Brooklyn, N.Y., for the U.S.

J. Jeffrey Weisenfeld, New York City, for H. Leonard Berg.

Lawrence A. Dubin, New York City, for Solomon Schwartz.

Paul A. Goldberger, New York City, for Leon Lisbona.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendants Berg, Lisbona, and Schwartz ("defendants" for the purpose of this Memorandum and Order) have moved prior to trial to dismiss the following four counts of a fourteen count superseding indictment filed on October 15, 1987:

1. Count one, alleging a violation of the so-called RICO statute, 18 U.S.C. § 1962 (1982), because a pattern of racketeering cannot be proven;

2. Count two, alleging a mail fraud violation, 18 U.S.C. § 1343 (1982) because the

indictment insufficiently alleges fraudulent intent;

3. Count five, also alleging mail fraud, because defendants did not obtain property; and,

4. Count eleven, alleging mail fraud, because use of the jurisdictional means cannot be shown.

For the reasons given below, the motion to dismiss is denied in all respects.

FACTS

An earlier published opinion of this Court in this action summarized the indictment:

> [T]he case involves ... a group of individuals who in a 42 page [now 38 page] 14 count indictment are essentially charged with illegally trafficking in firearms and other equipment whose export is restricted by the Arms Export Control Act. Defendants are charged with, *inter alia*, conducting an enterprise which engaged in racketeering activity ... as well as violations of the Arms Export Control Act....

*United States v. Berg*, 643 F.Supp. 1472, 1474 (E.D.N.Y.1986). That Memorandum and Order, as well as a later Memorandum and Order, 658 F.Supp. 253 (E.D.N.Y.1987), disposed of pretrial motions, including those concerning a proffered defense based on official authorization, that are not at issue here.

The four counts of the indictment at issue on this motion involve an alleged RICO violation and mail and wire fraud. The indictment alleges that defendants "associated together for the purpose of making money by selling and exporting arms, ammunition and articles of war." Indictment at 3. The association was allegedly an enterprise within the meaning of the RICO statute. *Id.* The enterprise allegedly conducted racketeering activity through mail and wire fraud. *Id.* at 5. The indictment alleges three acts of racketeering, corresponding to mail and wire fraud counts two, five and eleven. *Id.* at 6–8, 12–13, 18–19, 32–34.

Count two alleges that defendants "did knowingly and wilfully devise a scheme and artifice to defraud Litton Industries and to obtain property from Litton Industries by means of false and fraudulent representations and promises." *Id.* at 12. The indictment alleges that in 1982, during the Falklands Island War, defendants used the mails to obtain fraudulently, approximately 950 night vision devices (goggles) from Litton for sale to the nation of Argentina for use against Great Britain. *Id.* at 10, 12–13. Allegedly, Litton required proof from purchasers that goggles and other products would be exported, if at all, in conformity with the Arms Export Control Act, 22 U.S.C.A. § 2778 (West 1979 & 1987 Supp.). The Act and pertinent regulations, 22 C.F.R. §§ 121, 123, 127, require exporters to apply for Arms Export licenses and "to state, among other things, the nature of the armaments to be exported, the end recipient of the armaments, any foreign intermediate consignee for the armaments and the purpose for which the armaments are required." Indictment at 2. However, the defendants allegedly misinformed Litton as to the intermediaries and end recipients of the goggles, and falsely promised that proof of compliance with the licensing requirements would be provided to Litton.

Count five, like count two, charges mail fraud. It alleges that defendants:

> did knowingly and willfully devise a scheme and artifice to defraud the Office of Munitions Control of the United States Department of State and to obtain property, to wit, a validated export license, from the Office of Munitions Control through false and fraudulent representations and promises.

Indictment at 18. The defendants allegedly intended to supply the Iraqi National Police in 1982 with handguns, shotguns, and ammunition. They allegedly falsely stated in their Arms Export license application that the foreign end user would be an arms dealer in the Netherlands. *Id.* at 18–19.

Count eleven includes two overt acts. First, it alleges an additional use of the mails and wires to obtain fraudulently an Arms Export license. Defendants allegedly falsely stated that arms and ammunition actually intended for delivery to Po-

land would end up in Mexico. *Id.* at 33. Second, in an alleged effort to recover such arms and ammunition after their seizure by the United States Customs Service, defendants Berg and Schwartz allegedly used the mails to state falsely that the arms and ammunition were intended for Mexico. *Id.* at 33–34.

LAW

In relevant part, the RICO statute provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate, or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

18 U.S.C. § 1962(c) (1982). Most important to this motion, a pattern of racketeering activity "requires at least two acts of racketeering....". 18 U.S.C. § 1961(5) (1982).

In relevant part, the mail fraud statute states that:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office ... any such matter or thing, shall be fined not more than $1000 or imprisoned not more than five years, or both.

18 U.S.C. § 1341 (1982). Two elements of proof of mail fraud are particularly relevant to this motion. First, intent is inherent in the statutory term "scheme or artifice to defraud." "Critical to a showing of a scheme to defraud is proof that defendants possessed a fraudulent intent ... the government ... must ... prove that the defendants contemplated some actual harm or injury to their victims." *United States v. Starr,* 816 F.2d 94, 98 (2d Cir.1987). Second, the scheme to defraud must involve a victim's money or property. *United States v. Carpenter,* 484 U.S. 19, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987); *United-*

*ed States v. McNally,* 483 U.S. 350, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987).

■ One or more counts of an indictment may be dismissed if the facts alleged are insufficient as a matter of law to support a conviction under the charged offense. The indictment must allege every element of each crime charged. *United States v. Seegar,* 303 F.2d 478, 482 (2d Cir.1962). An indictment must specifically allege or state facts from which a defendant may necessarily imply the necessary intent. *United States v. McLennan,* 672 F.2d 239, 242 (1st Cir.1982); *United States v. Berlin,* 472 F.2d 1002, 1007 (2d Cir.), *cert. denied,* 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001 (1973). This Court's review of the indictment's adequacy must be guided by the principle that "the basic function of an indictment is to inform the defendant so that he may defend himself." *Seegar,* 303 F.2d at 483.

DISCUSSION

■ Count one may be dismissed at this time only if two or more of the mail fraud counts are dismissed. A pattern of racketeering activity requires convictions on at least two predicate acts. *See* 18 U.S.C. § 1961(5) (1982). As all three mail fraud counts may not be dismissed at this time, *see* discussion *infra,* count one must remain.

Defendants argue that count two fails to allege that they contemplated actual harm to Litton Industries. Furthermore, they argue that any misrepresentation(s) did not relate to the substance of Litton's sale of the goggles. However, the indictment alleges that "[t]o obtain the night vision devices from Litton Industries, the defendants ... had to provide assurances to Litton that the devices would not be exported in violation of the law." Indictment at 10–11. Defendants are also charged with "knowingly and wilfully" devising a scheme and artifice to defraud Litton by means of false and fraudulent representations and promises. *Id.* at 12. Read together, these allegations charge that the defendants knew that but for their false representations, they could not have pur-

chased the goggles from Litton. Clearly, if Litton's sale was conditioned on the false assurances, the false assurances went to the basis of the bargain. Thus, fairly read the indictment charges defendants with the necessary intent.

A similar argument based on insufficient intent to harm was made before the Supreme Court in *Carpenter*. 108 S.Ct. at 321. Defendant argued that his scheme amounted to no more than a violation of his employer's rules against revealing prepublication information. The Supreme Court had "little trouble in holding that the conspiracy to trade on the Journal's [defendant's employer] confidential information is not outside the reach of the mail and wire fraud statutes." *Id.* If an employee's misuse of confidential information goes to the basis of his bargain with his employer, so may a purchaser's statements to a seller on which the seller relies in making the sale.

Furthermore, any factual question as to the actual significance of defendant's representations to the sale must be left to a jury at trial. The indictment alleges that defendant's representations were essential to acquiring the goggles. If the evidence at trial in fact shows that the representations were collateral or that Litton actually cooperated with the sale knowing that the proffered information was false, count two may be dismissed at that time.

Defendants also argue that count five must be dismissed because the Arms Export license, allegedly fraudulently obtained from the government, may not be considered "property" within the meaning of the mail fraud statute. In its most restrictive sense, property is "the right and interest or domination rightfully obtained over [an] object, with the unrestricted right to its use, enjoyment and disposition." 63A Am.Jr.2d *Property* § 1 (1984). In a more liberal sense property is a collection of certain rights. Also viewed most narrowly, a license is merely a privilege to conduct activity which the government oth-erwise prohibits. 53 C.J.S. *Licenses* § 2 (1987).

 Nonetheless, a license may implicate property interests.[1] A license holder, for example, may acquire a property right protected by the Constitution's Due Process Clause. *Kudish v. Bradley*, 698 F.2d 59, 61 (1st Cir.1983). A professional license may be property for the purposes of equitable distribution. *O'Brien v. O'Brien*, 66 N.Y.2d 576, 586–7, 498 N.Y. S.2d 743, 748, 489 N.E.2d 712 (1985). A license may be transferrable and may be worth a substantial sum to its holder.

The law is currently unclear whether mere property interests fall within the statute or whether only property in its strictest sense is protected. *Carpenter* refers to "interests" as well as "rights." 108 S.Ct. at 320. In that case, the Supreme Court followed the current legal characterization of confidential business information in deciding whether the defendant acquired property. *Id.* ("Confidential business information has long been recognized as property."). The Supreme Court also considered the factual context of the defendant's disclosure of such information, as it was revealed at trial, in determining the statute's reach. *Id.* at 321.

Because the law in this area is so unclear and the factual record in this action sparse at best at this point, dismissal of count five on the basis that all schemes to defraud persons or the government of any type of license do not fall under the mail fraud statute would be premature. Testimony at trial may show that the license at issue here is more like confidential business information (property), *see Carpenter*, 108 S.Ct. at 321–22, than the intangible right to honest and impartial government, *McNally*, 107 S.Ct. at 2881–82. In the absence of applicable precedent, further facts should assist the Court to characterize accurately Arms Export licenses.

Count eleven must remain at this time since one of the two overt acts alleged in

---

1. Differentiating between the license itself and an underlying privilege or property right does not advance the analysis. "[I]n strict propriety 'license' refers only to the right or privilege conferred and 'certificate of license' is the written document which evidences such right." 53 C.J.S. *Licenses* § 2 (1987).

count eleven involves another allegedly fraudulent application for an export license. Regardless of any possible infirmities in the second overt act alleged in count eleven, the first overt act is sufficient to preserve count eleven prior to trial.

Defendants allege that the second overt act in count eleven, the defrauding of the Customs Service to obtain return of the seized weapons and ammunition, cannot be proven at trial. As with count two, this count and overt act must remain for the additional reason that the government, having properly alleged the commission of a crime, must be given the opportunity to prove its commission at trial.

Defendant's motions to dismiss counts one, two, five, and eleven must be and hereby are denied.

SO ORDERED.